**Opinion filed December 7, 2017**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00283-CR

_____

## JOEL RUBIO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-44,736**

## MEMORANDUM OPINION

The jury convicted Joel Rubio of aggravated robbery and assessed his punishment at confinement for a term of ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. In a single issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

*Background Facts*

On December 8, 2014, Appellant and George Blanco walked into a Wal-Mart in Odessa. Their actions attracted the attention of two asset protection employees: Franco Herrera and Lucky Thach. Herrera testified that he was in the process of training Thach as an asset protection employee at the time. Herrera noticed Appellant and Blanco "grabbing . . . stuff from the jewelry department and looking around a lot, more than usual." Herrera and Thach observed Appellant and Blanco opening packages and concealing merchandise. In this regard, Appellant was wearing a big coat. Thach testified that Appellant used a pocketknife to cut open difficult packages.

Blanco left the store alone and entered a red SUV. Herrera and Thach then focused their attention on Appellant. After Appellant passed the last point of sale, Herrera and Thach identified themselves and asked Appellant to speak with them about the unpaid merchandise. Appellant agreed to accompany them to the asset protection office in the back of the store.

As they were walking to the office with Appellant walking in front, Appellant kept putting his hand inside his pocket. Herrera testified that he asked Appellant to stop reaching into his pocket due to safety concerns. With his back to Herrera and Thach, Appellant subsequently pulled out a pocketknife with his left hand, passed it to his right hand, and flipped it open. Herrera testified that he heard the distinct sound of the blade locking into place. Without turning around or waving the knife, Appellant turned his head and said, "[Y]ou better not f-----g come near me, don't come near me." Herrera started to back away from Appellant because he felt threatened and was concerned for Thach's safety. Thach testified that she was afraid Appellant was going to harm her or someone else. Appellant continued walking and left the store without further incident.

The police were called, and a description of the suspects and the red SUV were dispatched over the radio. Police officers located the suspects and recovered the knife from George Blanco's brother, Ramon Blanco, who was walking within a block of where Appellant was found.

Ramon testified that Appellant and George picked him up at his house. At some point, Appellant threw down the knife, claiming that he no longer wanted it. Ramon recovered the knife to add to his knife collection and then went his separate way. Subsequently, Officer Keith Almonte of the Odessa Police Department stopped Ramon for investigatory purposes and discovered the knife during a pat-down.

*Analysis*

The indictment alleged that, while in the course of committing theft of property and with intent to obtain or maintain control of said property, Appellant intentionally or knowingly threatened or placed Herrera in fear of imminent bodily injury or death and that Appellant used or exhibited a deadly weapon, to-wit: a knife, in doing so. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (West 2011). In his sole issue on appeal, Appellant asserts that the evidence is insufficient to support his conviction for aggravated robbery because the State failed to prove that the pocketknife was a deadly weapon. We disagree.

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the

3

evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits robbery when, in the course of committing theft and with the intent to maintain control of the property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. PENAL § 29.02(a)(2). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). One of the ways in which a person can commit aggravated robbery is to use or exhibit a deadly weapon. *Id.* § 29.03(a)(2). A "[d]eadly weapon" is "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17) (West Supp. 2017). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

"A knife is not a deadly weapon, per se." *Blain v. State*, 647 S.W.2d 293 (Tex. Crim. App. 1983). Accordingly, we focus our analysis on the second element of the

4

definition. Appellant asserts that the evidence is insufficient to prove that the knife was capable of causing death or serious bodily injury in the manner he used it.

In determining whether a weapon is deadly in its manner of use or intended manner of use, the defendant need not have actually inflicted harm on the victim. *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017). Instead, we consider words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon. *Id.* Expert or lay testimony may establish that the weapon was capable of causing death or serious bodily injury. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008).

The State offered into evidence the knife alleged to be used in the incident, and the State provided a demonstration through the victim's testimony of how Appellant used it. Furthermore, two Odessa police officers testified as to the knife's capacity for causing death or serious bodily injury. Officer Almonte testified that the blade was one and one-half inches long, and he answered affirmatively when asked if the knife was capable of causing death or serious bodily injury. Detective Sam Chavez, a ten-year veteran of the Odessa Police Department, testified that this knife could cause serious bodily injury or death.

Appellant asserts that a rational juror could not conclude that the knife was capable of causing death or serious bodily injury based on a police officer's conclusory statement. However, the jury had other evidence before it to consider, including the alleged knife. Accordingly, the jury could independently evaluate the knife's characteristics and capacity for causing death or serious bodily injury. *See Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) ("One appropriate method of showing the physical characteristics of a weapon is to introduce the weapon itself into evidence."). The jury also observed the victim's demonstration

of how Appellant used the knife. Additionally, the jury heard testimony that Appellant transferred the knife from one hand to the other; opened the blade of the knife; and, after doing so, told the victims, "[D]on't come near me." A reasonable person standing in the victims' shoes would consider that Appellant had threatened them with the knife. *See Johnson*, 509 S.W.3d at 324 n.5.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there is sufficient evidence from which a rational juror could find that the knife was a deadly weapon in the manner that Appellant used it or intended to use it. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


December 7, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6