

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ARMANDO IGLESIAS, | § | No. 08-16-00311-CR |
| Appellant, | § | Appeal from |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20160D03284) |
| | § | |

## O P I N I O N

A jury convicted Appellant Armando Iglesias of the offense of "deadly weapon in a penal institution." TEX.PEN.CODE ANN. § 46.10 (a)(1), (2)(West 2011). The trial court heard punishment evidence and sentenced Appellant to confinement for 40 years. On appeal, Appellant presents two issues, first challenging the sufficiency of the evidence to support the deadly-weapon element of the offense, and then contending that the trial court erred when it admitted Appellant's out-of-court statements as evidence. We affirm the trial court's judgment.

### BACKGROUND

On January 6, 2016, Appellant was an inmate at the El Paso County Jail Annex. As part of his duties that morning, Officer Jesus Morales provided food to Appellant, who became extremely upset and belligerent and complained that his portion was too small. After he had given the other inmates their food, Officer Morales advised Appellant to keep his plate, and informed

him that he would bring Appellant an extra plate. Appellant's belligerence continued, and he began inciting the other inmates. Concerned that the other inmates might become belligerent and create a safety hazard, possibly leading to a riot, Officer Morales decided to transfer Appellant to administrative segregation for safety reasons, and for purposes of clearing the threat, and preventing the situation from escalating. This decision was initially approved by Sergeant Ernest Esparza.

Officer Morales advised Appellant that he was being transferred and instructed him to gather his belongings. Appellant was upset that he was being transferred. As Officer Morales took Appellant from his cell, Appellant informed Officer Morales that he "didn't know who he was messing with," and stated that he was going to file a grievance against Officer Morales.

Appellant placed his belongings on his mattress, and as he began to carry the mattress, an object that appeared to be a homemade handle to a weapon fell. The handle appeared to have been taken from a scrub brush and had been modified from its original shape. Altered items are not authorized in the facility and are considered contraband. When Officer Morales picked up the item and asked Appellant what it was, Appellant stated he had found the item.

Officer Morales placed Appellant in a visitation area and searched him, and when he searched Appellant's property in Appellant's presence, Officer Morales discovered a "weapon," a "shank" made from a plastic eyeglass earpiece that was sharpened at the edges to a very sharp point. The weapon was located in a container with some of Appellant's soap, deodorant, and other belongings that had been in Appellant's possession and in his cell. Officer Morales agreed that although the two pieces, the handle and the shank, could be put and held together, they needed something added to prevent the handle from separating from the weapon. Officer Morales wrote

2

a violation report for possession of a weapon in a penal institution, which typically would trigger an administrative process against Appellant that he was permitted to challenge.

Sergeant Esparza testified that Officer Morales approached him regarding pursuit of an administrative disciplinary sanction for the items found, and when Sergeant Esparza saw what had been found, he decided in his discretion to place Appellant in segregation and to pursue criminal charges against Appellant for possessing a weapon rather than imposing administrative sanctions. The custodian of records for the El Paso County Sheriff's Office also testified that Sergeant Esparza did not agree to proceed administratively against Appellant as Officer Morales had requested.

After the State rested its case, Appellant sought a directed verdict on the basis that the State had failed to prove or elicit testimony that the weapon was capable of causing death or serious bodily injury, and noted that the testimony showed that the two items could not form a weapon without anything else. The trial court denied the motion for directed verdict, and Appellant neither testified nor called any witnesses. After deliberations, the jury returned a verdict of guilty. Appellant pleaded true to two enhancement allegations and sought a determination on punishment from the trial court, which sentenced Appellant to 40 years' confinement.

## DISCUSSION

### I.

We first address Appellant's sufficiency challenge. When reviewing the record for legal sufficiency, we consider the combined and cumulative force of all admitted evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443

3

U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Johnson v. State*, 509 S.W.3d 320, 322 (Tex.Crim.App. 2017).

It is a felony offense for a person, while confined in a penal institution, to intentionally, knowingly, or recklessly: (1) carry on or about his person a deadly weapon; or (2) possess or conceal a deadly weapon in the penal institution.[1] TEX.PEN.CODE ANN. § 46.10 (a)(1), (2). Section 1.07(a)(17) of the Penal Code defines a deadly weapon as: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX.PEN.CODE ANN. § 1.07(a)(17)(A), (B)(West 2011).

In Issue One, Appellant contends the State's evidence is insufficient because it failed to establish under Section 1.07(a)(17)(B) that the weapon components at issue, in the manner of its use or intended use, was capable of causing death or serious bodily injury. TEX.PEN.CODE ANN. § 1.07(a)(17)(B). However, this is only one definition of a deadly weapon.

The record clearly shows that the State attempted to satisfy the deadly-weapon element of the charged offense under subsection (A) by presenting evidence which it believed would show that the weapon was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX.PEN.CODE ANN. § 1.07(a)(17)(A). For this reason, our analysis regarding satisfaction of the deadly-weapon element under subsection (A) is guided by the Court

---

[1] *See* TEX.PEN.CODE ANN. § 1.07(a)(37)(West Supp. 2017)("Penal institution" means a place designated by law for confinement of persons arrested for, charged with, or convicted of an offense); TEX.LOC.GOV'T CODE ANN. §§ 351.001 (West 2005)(a county's commissioners court shall provide safe and suitable jails for the county), 351.041(a)(county sheriff is the keeper of the county jail); *see also* TEX.GOV'T CODE ANN. §§ 511.001(2)(West 2017) ("Correctional facility" means a facility operated by a county or other specified entity for the confinement of a person arrested for, charged with, or convicted of a criminal offense), (3)("County jail" means a facility operated by or for a county for the confinement of persons accused or convicted of an offense), (6)("Inmate" means a person arrested for, charged with, or convicted of a criminal offense of this state or another state of the United States and confined in a county jail or other specified facility), (7)("Prisoner" means a person confined in a county jail).

4

of Criminal Appeals' guidance in *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991); *see also Johnson v. State*, 509 S.W.3d at 324 n.6 (addressing legislature's definition under subsection (B) and capability of weapon to cause serious bodily injury or death). In *Thomas*, the Court observed that the legislature has classified as deadly weapons "other objects specifically designed, made, or adapted to cause serious bodily injury" regardless of their usage, and declared that where the evidence is adequate to prove the deadly-weapon element under subsection (A), it is unnecessary "to verify that the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use" under subsection (B). *Thomas*, 821 S.W.2d at 620, *citing Walker v. State*, 543 S.W.2d 634, 636-637 (Tex.Crim.App. 1976). Consequently, the evidence is fully adequate if it shows the weapon to be deadly by design, rather than by usage. *Id*.

In this case, in addition to evidence that Appellant was found to have the crafted handle and shank in his possession, the latter of which was described as having been altered to have a very sharp point, and which could be used together, Officer Morales also testified that inmates were not permitted to have writing pens because they could be used as stabbing weapons and could cause serious bodily injury to officers and inmates. Viewed in the light most favorable to the verdict, we find the evidence legally sufficient to justify the jury's finding that the weapon was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Thomas,* 821 S.W.2d at 620; *see Crittendon v. State*, 923 S.W.2d 632, 635 (Tex.App.--Houston [1st Dist.] 1995, no pet.)(evidence of prisoner-made shank, a metal rod with sharpened tip and paper handle, sufficient to permit rational trier of fact to conclude beyond reasonable doubt that defendant committed offense of possession of deadly weapon in penal institution); *Shugart v.*

*State*, 32 S.W.3d 355, 360 (Tex.App.--Waco 2000, pet. ref'd)(evidence of shank, icepick type weapon consisting of metal rod sharpened at one end and wrapped with a cloth at other end, although used, was legally sufficient to satisfy deadly-weapon element under subsection (A)); *see also Smith v. State*, 51 S.W.3d 806, 809 (Tex.App.--Texarkana 2001, no pet.)(in aggravated assault case, evidence of shank in the form of a sharpened piece of metal found lodged in inmate's cell toilet permitted rational jury to conclude object was deadly weapon). Issue One is overruled.

## II.

In Issue Two, Appellant argues the trial court erroneously admitted in evidence Appellant's statement because it permitted a collateral offense, harassment of a public servant, to be considered by the jury. Although Appellant acknowledges the State may present evidence of an extraneous act to show a defendant's preparation, he contends the evidence is not relevant because it is not so linked together in relation to time and circumstance with the charged offense such that one can be fully shown without proving the other. He further contends that evidence of an extraneous offense offered through Appellant's statements is unrelated to the instant offense and were related only to Appellant's intent to file a grievance against Officer Morales. Moreover, because Appellant did not testify nor present witnesses, he asserts that his statement could not properly be admitted on the basis that he "opened the door" to admission of the extraneous offense nor because he had left a false impression regarding previous conduct. He ultimately argues that even if relevant, under a Rule 403 balancing test, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, or needless presentation of cumulative evidence.

*Preservation of Issues*

Generally, to preserve error there must be a timely and specific objection to the complained-of evidence. *Davis v. State*, 313 S.W.3d 317, 347 (Tex.Crim.App. 2010). Specifically, to preserve a complaint for appellate review, the record must show that a defendant made a timely and specific objection to the trial court in compliance with the rules of evidence or the rules of appellate procedure, that the objection was sufficiently specific to make the trial court aware of the complaint unless the specific grounds were apparent from the context, and that the trial court ruled on the objection, either expressly or implicitly, or refused to rule and the complaining party objected. TEX.R.APP.P. 33.1(a)(1)(A), (a)(2)(A-B); *see Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex.Crim.App. 2009). Additionally, an objection stating one legal basis may not be used to support a different legal theory on appeal. *See e.g., Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004)(objection based on Fifth Amendment did not preserve state constitutional ground). A complaint is timely if it is made "as soon as the ground of objection becomes apparent." *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011)(citation omitted).

During trial, the trial court overruled Appellant's objection to the admission of his out-of-court statements, including the statement that Officer Morales did not know with whom he was "messing," under Rule of Evidence 403. *See* TEX.R.EVID. 403. Therefore, that complaint is preserved for our consideration. Appellant also objected on the basis that his out-of-court statement was not admissible in evidence because it was not made in furtherance of the alleged violation under Rule of Evidence 801. *See* TEX.R.EVID. 801. However, the trial court did not rule on the objection, and only commented, "Your objection is noted." Because Appellant did

not object to the trial court's failure to rule on his objection, this complaint is not before us on appeal. TEX.R.APP.P. 33.1(a)(1)(A), (a)(2)(A-B). Because Appellant did not object in the trial court on the other grounds he has raised on appeal in Issue Two, they are not properly before us and we do not address them.

*Standard of Review*

We review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App. 1990); *Torres v. State*, 543 S.W.3d 404, 419 (Tex.App.--El Paso 2018, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and we will uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343-44. A trial court's ruling is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344. Moreover, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his correct ruling. *Id.*

*Rules of Evidence 404(b) and 403*

Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or bad acts is not admissible during the guilt-innocence phase of trial as evidence that the defendant acted in conformity with his character by committing the charged offense. TEX.R.EVID. 404(b)(1). However, extraneous offense evidence may be admissible if it has relevance beyond character

conformity, such as showing motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.  TEX.R.EVID. 404(b)(2).   The enumerated exceptions to Rule 404(b) are neither mutually exclusive nor collectively exhaustive.  *Montgomery*, 810 S.W.2d at 377.   For example, extraneous offense evidence may also be admitted to rebut a defensive theory.  *See Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App. 1988)("Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory."), *disapproved on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex.Crim.App. 1993).

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  TEX.R.EVID. 401.   The question of whether extraneous offense evidence has relevance apart from character conformity is a question for the trial court.  *De La Paz*, 279 S.W.3d at 343.

Rule 403 provides that a trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence, and this too is a question for the trial court.  TEX.R.EVID. 403; *see De La Paz*, 279 S.W.3d at 343.   In conducting a Rule 403 balancing test, the trial court must balance (1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative.  *See*

*Gigliobianco v. State,* 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006). These factors may well blend together in practice. *Id.*

In applying this test on appeal, Appellant specifically claims: (1) the probative value of the extraneous act, that is the alleged threat against Officer Morales, was substantially outweighed by "prejudice;" (2) the potential of the evidence to impress the jury in some indelible way was great; (3) the State spent considerable time developing evidence of the extraneous act; and (4) the State had no need to present evidence of the extraneous act in support of the charged offense. For these reasons, Appellant maintains the trial court improperly admitted in evidence his statement to Officer Morales when it conducted its Rule of Evidence 403 balancing test.

Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. *See De La Paz*, 279 S.W.3d at 343, *citing Montgomery v. State*, 810 S.W.2d at 388 ("[W]hen the trial court is called upon by sufficient objection to balance probativeness and prejudice, the presumption is now that probativeness is the weightier consideration unless in the posture of the particular case the trial court determines otherwise."); *Hammer v. State,* 296 S.W.3d 555, 568 (Tex.Crim.App. 2009). Based on this presumption as well as our review of the record and the relevant Rule 403 criteria, we conclude the probative value of the extraneous-offense evidence was not substantially outweighed by any prejudicial impact.

The record establishes that the trial court could have reasonably concluded that Appellant's statement was admissible in evidence for the following reasons. Appellant's statement to Officer Morales had inherent probative value regarding whether Appellant intentionally and knowingly possessed the contraband, and the State needed the statement in evidence to establish Appellant's guilty knowledge regarding possession of the contraband. Appellant's statement did not have a

10

tendency to suggest a decision on an improper basis but rather assisted the State in proving that Appellant had knowledge that he was in possession of the contraband, and likewise did not have a tendency to confuse or distract the jury from the main issue in the case, which was Appellant's alleged intentional and knowing possession of a weapon in a penal institution. Similarly, the statement did not have a tendency to be given undue weight by the jury or to mislead the jury, and merely went to show Appellant's knowing possession of the contraband. In fact, Appellant had professed to Officer Morales that he had found the handle but had kept it. Finally, the statement did not cause undue delay and was not cumulative of other evidence. At trial, the statement was addressed during two sets of questions and answers; the first occurring during the State's direct examination, and the other occurring during defense counsel's cross-examination. Because we conclude the trial court did not abuse its discretion in admitting this statement in evidence, Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

October 17, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Publish)

11