Opinion filed November 6, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00049-CR

_____

## CLARENCE LOVETT WATSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause B-23-0099-CR**

## MEMORANDUM OPINION

The jury found Appellant, Clarence Lovett Watson, guilty of the offense of aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West Supp. 2024). After Appellant pled "true" to an enhancement allegation, the jury found the enhancement to be "true" and assessed his punishment at confinement in the Institutional Division of the Texas Department

of Criminal Justice for fifty years. In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction. We affirm.

*Background Facts*

On November 4, 2022, Marcus Phillips woke up at approximately 6:30 a.m. and, as he typically does, checked the motion cameras positioned around the exterior of his home to see if anything had been captured by the cameras. He saw that at approximately 3:30 a.m., one camera had captured Appellant walking up to the front steps of Phillips's home and setting something down in front of the front door. Another camera captured Appellant walking away, past Phillips's vehicles.

At approximately 7:00 a.m., Phillips, carrying a flashlight, checked on his vehicles that were parked in his carport. Phillips found no damage to the vehicles but heard a noise behind him, and when he turned he saw Appellant walking across the street toward him.

Phillips testified that Appellant's demeanor was "[v]ery aggressive" as he approached. Appellant shouted that Phillips and his wife had been in Appellant's home and that they "were going to cause [Appellant] harm and he was sick of it and tired of it."

In response, Phillips—then a deputy with the Ector County Sheriff's Department—called the sheriff's office dispatch and alerted dispatch of the situation and requested emergency assistance. During the call, Phillips noticed that Appellant was holding a knife or "some type of object" in his hand. He asked Appellant what was in his hand. Appellant responded that it was a knife and threatened to kill Phillips. This exchange can be heard on the dispatch call, which was published to the jury. Phillips and Appellant were approximately five to six feet apart at that time.

Phillips described the object in Appellant's hand as a dark-colored pocketknife. Phillips demonstrated at trial how Appellant was holding the knife

2

during the assault: in the middle with part of the blade sticking out from his hand and his thumb on the blade.

As Phillips backed toward his house and reentered his house, Appellant continued to threaten him. On the dispatch call, Appellant can be heard repeatedly threatening to kill Phillips, and this exchange is depicted on video recorded by Phillips's motion cameras, which were also published to the jury. At this time, Phillips and Appellant were around twenty feet away from one another. Phillips testified that Appellant's actions led him to feel threatened.

Deputies from the sheriff's office responded to the scene. Deputy Dustin Fowler and Deputy Ryan Kelly with the Ector County Sheriff's Office were among those that responded and testified at trial. Deputy Kelly testified that he ultimately detained Appellant, who had returned to his home after the incident. While Appellant was detained, he told Deputy Kelly that he left everything he had "on the table" inside his home.

Deputy Fowler entered Appellant's home with permission from another person living inside. Deputy Fowler asked him if Appellant usually carried a knife, and in response, he showed Deputy Fowler a folding pocketknife on the kitchen counter.

Deputy Fowler called Deputy Kelly into the home to see the knife on the kitchen counter. Deputy Kelly testified that he did not collect the knife at the scene because he was not "comfortable collecting the knife without a search warrant." As a result, the knife brandished by Appellant was not offered at trial. Instead, evidence of the knife was presented through the Axon bodycam video from Deputies Fowler and Kelly.

Deputy Fowler, who had experience with electrical work, noted the knife was a Klein Tools brand and of the kind commonly used for electrical work. At trial, Deputy Fowler explained that these knives are "very sharp" to allow them to cut

through insulated copper wire. Deputy Fowler testified that the knife was about the size of his hand while open and approximately five to six inches in length while closed. He further testified that the knife found in Appellant's home was consistent with Phillips's description of the weapon and that he had reason to believe it belonged to Appellant.

At trial, Phillips also stated that the pocketknife found in Appellant's home was consistent with what he saw in Appellant's hand during the encounter. Phillips testified that he was "[a] hundred percent" certain that the item in Appellant's hand during the assault was a knife.

*Analysis*

In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction for aggravated assault with a deadly weapon. Specifically, Appellant argues that the evidence was insufficient to show that he used or exhibited a deadly weapon during the assault. He contends that, as a result, "no rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt." Appellant asks this court to reform the judgment to delete the deadly weapon finding, to reflect a conviction for the lesser included offense of assault and then remand the case for a new punishment hearing. *See Britain v. State*, 412 S.W.3d 518, 521 (Tex. Crim. App. 2013) (A court of appeals may reform a judgment to a lesser-included offense where the evidence is legally insufficient as to an aggravating element.).

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt.  *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded.  TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899.  This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination.  *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt.  *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).  Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction.  *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence.  *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).  Instead, appellate courts must consider the cumulative force of all the evidence.  *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the

State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

As relevant to this case, a person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. PENAL § 22.01(a)(2). A person commits an aggravated assault if the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). In this regard, the indictment charged Appellant with intentionally and knowingly threatening Phillips with imminent bodily injury by pointing a deadly weapon in the form of a knife in his direction. A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B).

Appellant argues that there was insufficient evidence to prove that he used or exhibited a deadly weapon during the commission of the assault. Appellant contends that, by failing to produce a recovered weapon to the jury, "the State failed to sufficiently prove that [Appellant] had any weapon, let alone a deadly weapon, in his hand." Here, despite not introducing the knife into evidence, the State presented other sufficient evidence for a jury to find that Appellant used or exhibited a knife during the assault.

At trial, Phillips described the knife as a dark-colored pocketknife, testified that Appellant told him he had a knife, and demonstrated how Appellant held the knife. He further testified that he felt threatened during the encounter and that he was "[a] hundred percent" positive Appellant held a knife. The testimony of a single eyewitness can be enough to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). In this regard, we must defer to the jury's determinations concerning the weight and credibility of the evidence presented at trial. *Brooks*, 323 S.W.3d 899.

Going beyond Phillips's testimony, Appellant stated that he held a knife, as can be heard during the dispatch call. Given this, a rational jury could have concluded that Appellant used or exhibited a knife during the assault.

The evidence further showed that a knife that matched Phillips's description was later found in Appellant's home, which the State presented to the jury through Deputy Fowler's and Deputy Kelly's bodycam footage. In this regard, when Appellant was detained, Deputy Kelly asked if he had any weapons or knives on him and Appellant stated that he left everything he had "on the table." Appellant's roommate confirmed that Appellant carried a black pocketknife and located it on the kitchen counter. Deputy Fowler testified that the knife the deputies found was consistent with what Phillips described. Phillips also testified that the knife found was consistent with what he saw in Appellant's hand.

Contrary to Appellant's contention, the State is not required to introduce a knife into evidence at trial to prove that the knife was a deadly weapon. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). Instead, the State may present other evidence to prove that a knife was wielded as a deadly weapon during the assault. *See id.*; *see also Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd) (relying on other evidence to find a knife was a deadly weapon where the knife was not presented at trial).

The State further presented evidence showing that Appellant repeatedly threatened Phillips while wielding the knife. Courts have consistently relied on threatening behavior to support a finding of a deadly weapon. *See, e.g., Johnson v. State*, 509 S.W.3d 320, 324 (Tex. Crim. App. 2017) (noting that the jury could have inferred from appellant's threats, his proximity to the victim, and his brandishing of the knife that the manner in which he intended to use the knife rendered it capable of causing serious bodily injury or death); *Jones v. State*, 843 S.W.2d 92, 96–97 (Tex. App.—Dallas 1992, pet. ref'd) (holding that the appellant displaying a knife

"in a manner conveying an express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied" is sufficient to show that the knife used was a deadly weapon).

Appellant used the knife to threaten Phillips multiple times, including while Phillips was only five to six feet away. When Appellant first told Phillips he had a knife, he immediately threatened to kill Phillips—revealing the manner in which Appellant intended to use the knife. Phillips described Appellant's demeanor as "very aggressive" during the encounter. He continued to threaten to kill Phillips as Phillips retreated and entered his home. This evidence was sufficient for the jury to conclude that Appellant wielded a knife during the assault.

Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant used or exhibited a deadly weapon during the commission of the assault. *See Jackson*, 443 U.S. at 319. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


November 6, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.